UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GABRIELLE KARAM, SAMANTHA STEVENS, and MEREDITH KARAM,** individually and on behalf of all others similarly situated,<br><br>**VERSUS**<br><br>**TEA DATING ADVICE, INC.** | **CIVIL ACTION NO. 2:25-cv-01790**<br><br>**SECTION L**<br><br>**JUDGE ELDON FALLON**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Gabrielle Karam, Samantha Stevens, and Meredith Karam, on behalf of themselves and all others similarly situated (the "Class") who respectfully submit this Memorandum in support of their motion requesting that the Court issue a temporary restraining order and a preliminary injunction (the "Motion"), pursuant to Federal Rule of Civil Procedure Rule 65, *et seq.*, enjoining Defendant Tea Dating Advice, Inc. ("Tea," sometimes "Defendant") from continuing to operate its mobile application the "Tea App" until it implements adequate data security policies, procedures, and practices to safeguard user data to protect against the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

Unless the Court enters a temporary restraining order and a preliminary injunction, Plaintiffs and millions of other users will suffer irreparable harm. Defendant has admitted to catastrophic security failures leading to at least three data breaches, exposing users' most sensitive personal information, including copies of their government-issued IDs, photographs, geolocation data, home addresses, and private messages concerning intimate health matters. The continued operation of the Tea App under these conditions presents an ongoing threat of further data exposure

and misuse and identity theft, the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault constituting irreparable injury for which there is no adequate remedy at law. Thus, Plaintiffs respectfully request that this Court issue a temporary restraining order ("TRO"), and that it set a hearing for a preliminary injunction on this matter as soon as reasonably practical thereafter.

## I.  FACTUAL BACKGROUND

Defendant operates the Tea App, a mobile application marketed as a "safe and private space" for women. In direct contradiction of its promises of security, Defendant engaged in fraudulent practices that resulted in a failure to safeguard the sensitive data of its users.

Defendant's privacy policy fraudulently claimed that verification images submitted by users, including photographs and government-issued IDs, were "immediately deleted" after use. However, Defendant has admitted to retaining at least 13,000 of these images for more than a year. This sensitive data was neither encrypted nor password protected, but rather it was stored in an unsecured Google Firebase "storage bucket," accessible to *anyone* with an internet browser.

On or about July 25, 2025, Defendant acknowledged a massive data breach (the "First Breach") that compromised users' personal data. This exposed data included drivers' licenses and home addresses. As a direct result, malicious actors on the infamous image board, 4-chan, created and disseminated interactive maps showing the geolocation coordinates and personal images of Tea App users.

On July 26, 2025, a day after the First Breach, Defendant posted on Instagram that acceptance times would be delayed due to the First Breach, and provided that the Tea App had received millions of new requests from prospective users to join the Tea App.

Just three days after the First Breach, on July 28, 2025, another breach (the "Second Breach") occurred, which allowed unauthorized access to millions of private messages sent between the Tea App's users. These messages reportedly contained deeply personal information regarding matters such as abortions, allegations of sexual assault, and cheating partners.

Despite the Breaches, on July 30, 2025, Defendant posted on Instagram that it had expanded its approval team and accepted *over 800,000 new users* since the previous morning.[1]



[2]

Despite the First Breach and the Second Breach, and the irreparable harm they caused to prior and existing Tea App users, Defendant advertised that it would be further expediting the authorization process. This action was an attempt to attract new victims. Defendant has repeatedly put profit over people and the security of their data and personal well-being. Defendant will

---

[1]TheTeaPartyGirls, *Instagram*, (July 30, 2025), https://www.instagram.com/p/DMwTCEPx3xF/?igsh=bjRycHpudXVtaGhv, (attached hereto as **Exhibit A**)

[2]*Id.*

3

continue to do so unless and until this Court intervenes, by means of which Defendant will be forced to reconcile with its negligence and employ proper security measures.

The risk of additional breaches and further exposure of users' Personally Identifiable Information ("PII") is not merely speculative; it is an ongoing reality. On August 19, 2025, 404 Media reported that they had discovered a third security breach (the "Third Breach," together with the First Breach and the Second Breach, the "Breaches") that exposed the personal information of the women Tea paid to promote its app.[3]

This Third Breach left these women's names, emails, phone numbers, and Venmo accounts exposed online. Alarmingly, reports inform that all a hacker had to do to access this information was add "/admin" to the Tea affiliate site's URL. While this security failure is shocking, it should not come as a surprise.

In 2025, Tea's Chief Executive Officer admitted that he did not know how to code, so he entrusted the security of millions of users' data to foreign freelance coders, who Tea has admitted left a giant security hole.[4] Tea did not plug this security hole until after it had been reached for comment regarding this matter on August 13, 2025. When 404 Media made Tea aware of this breach, instead of addressing the gravely serious security flaws, a Tea spokesperson touted that they now have 100,000 new women joining the app each day and have over seven million users.[5] Through their own words and actions, Tea has proven it puts its own financial interests above everything else and will continue to do so unless it is forced to make a change. The resulting harms, including further data exposure and misuse and identity theft, the imminent risk of stalking,

---

[3] Emanuel Maiberg, *How Tea's Founder Convinced Millions of Women to Spill Their Secrets, Then Exposed Them to the* World, 404Media, (Aug. 19, 2025) https://www.404media.co/how-teas-founder-convinced-millions-of-women-to-spill-their-secrets-then-exposed-them-to-the-world/. (attached hereto as **Exhibit B**)
[4] *Id.*
[5] *Id.*

domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault, cannot be adequately compensated by monetary damages after the fact.

Defendant admitted that the Breaches resulted from a failure to migrate legacy content to a new, more secure system. As a direct result of Defendant's fraud and negligence, Plaintiffs and the Class have suffered significant harm, including invasion of privacy, emotional distress, cyberbullying, an increased risk of identity theft, and the loss of their PII.

## II.   LAW AND ARGUMENT

Rule 65 of the Federal Rules of Civil Procedure provides that courts "may issue a temporary restraining order" when the facts in a verified complaint "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). For a court to grant a temporary restraining order, the moving party must show "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008); citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir.2003). The standards for issuing a temporary restraining order are identical to the standards for preliminary injunctions. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *see also Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) ("A TRO is 'simply a highly accelerated and temporary form of preliminary injunctive relief,' which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction).

**1. Plaintiffs are likely to succeed on the merits.**

"[A]n applicant must demonstrate a substantial likelihood that he will be successful on the merits in order to obtain preliminary injunctive relief. In the context of a request for a preliminary injunction the plaintiff need not demonstrate an absolute certainty of success on the merits." *Chambers v. Coventry Health Care of Louisiana, Inc.*, 318 F. Supp. 2d 382, 389 (E.D. La. 2004). Defendant has publicly admitted to the core facts supporting Plaintiffs' claims, including the failure to secure legacy data systems, the retention of verification images contrary to its privacy policy, and the resulting exposure of PII and private messages. These admissions, coupled with the fact that Defendant continues to allow breaches into its users' data, strongly support Plaintiffs' claims for negligence, invasion of privacy, and violations of consumer protection laws.

**2. The continued operation of the Tea App as currently configured will cause irreparable injury.**

Here, the continued operation of the Tea App will cause irreparable injury. Courts define irreparable harm as "when there is no adequate remedy at law, such as monetary damages." *Magliulo v. Edward Via Coll. of Osteopathic Med.*, 555 F. Supp. 3d 284, 296 (W.D. La. 2021); quoting *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). Defendant's own admissions confirm its security systems are critically flawed, that it failed to protect the sensitive data it collects from its users, including Plaintiffs and the Class, and that, through its deceptive practices, it remains in violation of various state consumer protection laws, including the Louisiana Unfair Trade Practices Act. The operation of the Tea App, as it currently exists, presents a continuous threat to the Plaintiffs and the similarly-situated class members for which monetary damages would be inadequate.

> 3. **The balance of harms overwhelmingly favors granting the injunction, and the issuance of a preliminary injunction will serve the public interest.**

The threatened harm to Plaintiffs and the Class outweighs the potential for harm or inconvenience to Defendant. The threatened harm to Plaintiffs and the Class from the continued operation of an insecure application is immense and potentially life-threatening. In contrast, any harm to Defendant would be purely economic and self-inflicted. As one of Tea's former employees said about Sean Cook, Tea's CEO, "his motive is money, not actually to protect people."[6] The temporary suspension of Defendant's business operations will serve to provide Defendant time in which it can implement the security measures it should have had in place from the beginning, as it represented that it had done to its users and the public. Public policy strongly favors protecting individuals from the catastrophic consequences of data insecurity over a company's interest in uninterrupted profit. The threatened harm to Plaintiffs and the Class outweighs the potential harm to Defendant, and the issuance of this preliminary injunction does not disserve the public interest, it advances it.

> 4. **Security should not be required for the granting of this temporary restraining order, or it should be nominal.**

FRCP 65(c) states "that [t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper." Fed. R. Civ. P. 65(c). However, the Fifth Circuit has consistently held that "[t]he amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978); *see* also *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Because Defendant's actions have repeatedly put its past and current users' safety in jeopardy, because the harms Plaintiffs are

---

[6] *Id.*

seeking protection from include domestic abuse, dating violence, stalking or sexual assault (among other protections), and because this Court has discretion as to whether security should be required, Plaintiffs, on behalf of themselves and similarly-situated class members, respectfully ask this Court to require no security be posted.

### III. CONCLUSION

Because all of the elements required for the granting of a temporary restraining order have been met, and for the other reasons set forth above, this Court should enter an immediate temporary restraining order and further order defendant Tea Dating Advice, Inc. to show cause why a preliminary injunction should not issue enjoining it from continuing to operate its mobile application the Tea App until it implements adequate data security policies, procedures, and practices to safeguard user data to protect against the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

Respectfully submitted,

*/s/ Lynn E. Swanson*
Gladstone N. Jones, III (LA Bar No. 22221)
Lynn E. Swanson (LA Bar No. 22650)
Kevin E. Huddell (LA Bar No. 26930)
Thomas F. Dixon (LA Bar No. 38952)
Rosa E. Acheson (LA Bar No. 39775)
**JONES SWANSON HUDDELL LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508